WASHINGTON TRANSFER & STORAGE CO. *v.* HARDING.

5-1642                                     317 S. W. 2d 18

Opinion delivered October 27, 1958.

*Wade & McAllister, Rex W. Perkins, Ed E. Ashbaugh,* for appellant.

*Peter G. Estes,* for appellee.

J. SEABORN HOLT, Associate Justice. On September 28, 1956, appellee filed an application with the Arkansas Public Service Commission seeking a permit to operate intra-state as a common carrier of household goods between points and places in Washington County and points and places in the State of Arkansas at large. Appellee alleged in its application that for about three months prior to its application, Washington County was being served by appellants, Washington Transfer and Storage Company and Red Ball Transfer & Storage Company, Inc., two licensed carriers which had merged into one company, thereby leaving only one carrier of household goods in Washington County and the territory affected. Appellee further alleged that the appellants

had merged into an organization and was "under the domination of one family until competition was destroyed contrary to Sec. 14 of the Arkansas Motor Carrier Act, found in Ark. Stats. 1947 annotated, Vol. 6B, Sec. 73-1767 (b), which says: 'The transfer, lease, assignment or hypothecation of the permits and/or certificates and/or licenses shall not be authorized where the commission finds such action will be inconsistent with the public interest, or will have the effect of destroying competition or creating a monopoly.' 2. That Fayetteville, Springdale and Washington County had grown tremendously without additional service. 3. That the present permittees had been rendering slow, unsatisfactory and inadequate service. 4. That the applicant was able and willing to perform the service and abide by the rules of the commission. 5. That there was a need for such additional service which would benefit the general public. All of which would indicate that public convenience and necessity required the additional service and the granting of the permit."

A number of witnesses were presented by appellee before the commission in support of its contentions and appellants offered only four in protest and two of them were from Little Rock. The commission (by a vote of 2 to 1) on November 8, 1956 granted appellee's application for a permit. Its findings and order contained these recitals: ". . . Applicants in this proceeding seek authority to pick up and deliver household goods at any point or place in the State of Arkansas when originating at or destined to points in Washington County. They have been in the Southwest Piano and Van Service since 1950. Applicants have a concrete and tile fireproof building 100 by 50 feet, with 5,000 cubic feet of floor space and are affiliated with Burnham American Van Lines of Columbus, Georgia. The Southwest Piano Company has two trucks with 18 foot van type bodies and a Fruehauf tandem trailer 33 feet in length. In addition, a pickup truck is used for light hauling.

Moving in this territory is unusually heavy, population considered, due partly to the large number of students moving to and from the University of Arkansas area. The City of Fayetteville has had an increase in population of 130 per cent from 1930 to 1950 and the figures projected to 1960 indicates an increase of 211 per cent over 1930. Representatives from the University, real estate and insurance firms, and others testified to the inadequacy of the presently authorized household goods carriers. Frequent and consistent delays have been encountered in getting moves made. Testimony of some witnesses was to the effect that they were delayed several days in getting moved. Financial statement of applicant shows assets of $21,782.63, including cash in bank $967.35, inventory $4,111.50 and accounts receivable $13,855.48. Liabilities amount to $3,687.25. Furniture vans and equipment are already owned,'' and further ''That present and future public convenience and necessity require the proposed operation; 2. That applicant is fit, willing and able, financially and otherwise, properly to perform the proposed service and to conform to the provisions of the Arkansas Motor Carrier Act, and to the rules and regulations of the Commission promulgated thereunder; and 3. That the application should be granted.'' The order of the commission was affirmed on appeal to the Pulaski Circuit Court, and from that judgment comes this appeal.

For reversal appellants contend (1) that the applicant (appellee here) must prove conclusively that the existing service in the area affected is inadequate, that public convenience and necessity require such additional service and the ability of applicant financially and otherwise to perform and (2) that the granting of appellee's application would give it an unfair advantage over existing carriers.

## 1 and 2

This case comes to us for trial *de novo*. Therefore, unless we find the findings and order of the commis-

sion, and that of the circuit court on appeal, to be against the preponderance of the testimony we must affirm. The rules guiding us on appeal in cases such as this have been announced many times by this court. We reannounced these rules in the case of *Wisinger* v. *Stewart,* 215 Ark. 827, 223 S. W. 2d 604, where we said: "* * * it must be remembered that we are dealing with the finding of a tribunal erected by the legislature for the special purpose of investigating and determining matters of the nature here involved; and the finding of such a tribunal on a fact situation may not be upset by the courts unless the finding is clearly against the weight of the testimony. . . . A point not to be lost sight of here is that *de novo* review by the courts, including this court, must not proceed as though the Public Service Commission did not exist and had never held a hearing. A hearing has been held, and the Commission which held the hearing has had the advantage of seeing and hearing the parties and witnesses face to face, whereas the circuit court and this court review the evidence from the record only. Where a matter is heard and decided by an administrative body such as the Public Service Commission, an order made by it should be upheld by the court on appeal unless it is against the weight of the evidence. . . . We try cases of this kind *de novo,* but it is the duty of the courts to accord due deference to the finding of the Commission, since it is the agency upon which the General Assembly has placed the duty to investigate and determine, in the first instance, the need for any proposed motor carrier service." See also *Ark. Motor Freight Lines, Inc.* v. *Howard,* 224 Ark. 1011, 278 S. W. 2d 118.

It is significant that of the some 48 protestants against the issuance of the permit only four testified opposing it, and two of these (Mr. Moore and Mr. Gathright) admitted they knew little if anything of conditions in Washington County. Mr. Moore testified that he lives in Little Rock and is vice-president of the O.K. Van and Storage Company; that Little Rock is 195 miles

from Fayetteville; that the idle equipment of his company is not available for local moving in Washington County, that his company frequently hauled a load in excess of 4,000 pounds from Little Rock to Fayetteville but it has never made a haul from Fayetteville to points in Northwest Arkansas. Mr. Gathright, who lives in Little Rock and owns and operates the Gathright Van and Storage Company, tended to corroborate Moore's testimony and further testified: "Q. You have a permit and you don't want anybody else to have one? A. I certainly don't."

After a careful review of all the evidence presented, which we do not detail here, we have concluded that the preponderance thereof supports the findings and order of the commission and the judgment of the Pulaski Circuit Court. Accordingly, the judgment is affirmed.

Mr. Justice WARD dissents.